[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought by the plaintiff wife against the defendant husband. The action seeks custody of two minor children as well as alimony and support and the return of the plaintiff's maiden name.
The parties were married in 1984 in Las Vegas, Nevada. There are two minor children issue of the marriage, Ronald Zachariah born September 9, 1984 and Lauren born November 8, 1985. No other minor children have been born to the plaintiff since the date of the marriage.
The marriage has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
The parties have stipulated with respect to the custody of the minor children and visitation and that stipulation is appended hereto and approved as being in the best interests of the children and is hereby made an order of the court and incorporated in this court's decree.
The plaintiff was 39 years old in 1991, and the defendant was 47. The parties lived together from 1979 until 1984 when they were married. The defendant had worked in his parents' restaurant in Stamford until 1987 when he was arrested for selling cocaine and convicted and jailed.
Before 1987, the plaintiff was working as a Sunday school teacher at St. Paul's in Darien which allowed the two children to go there free. She also worked for her brother-in-law in a fruit basket business when she was pregnant. She had trained as a nurse in Massachusetts in 1973. Later she took a course at the Berkley Secretarial School for a year. She has worked since 1987 as a phlebotomist at Stamford Hospital part time. She complains of discs in her back which interfere with her ability to walk and bend continuously.
While living with her husband, both before and during the marriage, the plaintiff paid rent of $50.00 a week which, in effect, paid the mortgage of $194.00 a month. The defendant had CT Page 11554 a child of his first marriage who stayed with him and the plaintiff every other weekend.
Since their marriage in 1984 until the defendant's arrest in 1987, the parties had a series of separations. In fact, at the time the defendant was arrested in 1987 he was not living with the plaintiff. Prior to that, the plaintiff had brought suit for divorce in 1986 and had filed a lis pendens on the marital home. Between 1984 and 1987, the defendant appeared to have large sums of money at his command so that the parties took frequent trips to Antiqua, to Bermuda, to Hawaii (only the defendant and his daughter). It appears now that perhaps the source of his income was the cocaine traffic.
After his sentence was served in 1987, the defendant returned to the plaintiff and the plaintiff took him in, she said, because he had no place to go. The defendant then persuaded her to drop the divorce and release the lis pendens so he could put two mortgages on the house. The two mortgages were to enable him to purchase a restaurant which became his full time employment until December, 1991 when the restaurant closed.
The defendant remained in the marital home only until April of 1988 when he left to live with his mother until September, 1988, at which time he returned to the marital home. The last time he returned followed the plaintiff's going to the child support enforcement agency to get support for the children. After making a couple of payments, the defendant asked to come back into the home and the plaintiff allowed him in. He then stayed until August 10, 1990.
Both parties appear to have had some experience with drug or alcohol abuse. There would also appear to be some relationship between the plaintiff's alcohol dependency and her continued willingness to allow the defendant to come back into her life after all his promises were never kept. One of the reasons for this would appear to be an economic one since without his income she had great difficulty supporting the two children as well as herself.
The defendant's assets and income appear to have been shrouded in some mystery. His restaurant was apparently leased from a corporation which in turn owned not only the building in which the restaurant was situated but which also contained eight rental apartments. It now appears that, although the defendant CT Page 11555 claimed during the trial that all of this was leased, it really was his. In one of the claims for relief his attorney identifies the corporation, which was in effect his alter ego and which was the owner of the property in question.
Now, however, all of this is somewhat irrelevant since in January of 1992, before the decision was rendered in this case, the court was informed that a petition in bankruptcy had been filed by the defendant. More recently, he has been discharged, I believe in June of 1992. Following that, there has been further hearing on his present situation.
The bankruptcy proceedings apparently discharged him of any liability for the mortgages on the house, the house having been foreclosed, and the plaintiff having been required to move out.
The defendant now has employment to which he testified at the last hearing as the manager of an athletic club called the Laurel Club in Stamford. His testimony was difficult to believe but at the same time hard to contradict since there was no paper trail to indicate the true situation in which he was engaged.
According to the defendant's testimony, he is working as a manager of a private club owned by a couple, a Mr. and Mrs. Magliore, both of whom work elsewhere. He testified that he knew nothing about the payroll although he was the manager and that the owner, Mr. Magliore, did not take any money from the restaurant's earnings. He also testified that he was being paid $400.00 a week to set the business up and that he expected to do better in the future but to what that would amount was never determined.
The defendant stated he is presently living with his mother and driving a 1981 Cadillac registered in his mother's name. He does acknowledge that he gets tips as the manager of the restaurant, but the extent of those tips was not determined. In addition, it appears employees who worked for him at the restaurant which he had run were now working for him at the club. Consequently, the inference is clear that he is probably engaging in another operation in which he is really the principal.
Nevertheless, the only information on which the court CT Page 11556 is able to make findings is his testimony as to his earnings. The plaintiff, on the other hand, has been working as a phlebotomist at the Stamford Hospital earning somewhere between $300.00 and $400.00 a week. She has also held at least two part time jobs doing a pollen count for an allergist at one time and working for another doctor at another time so that her earnings from time to time have been more than $400.00 a week. She thus has been able to have some savings which appear in her affidavit. However, there are outstanding medical bills on which she has made no payments.
The plaintiff is living in a house owned by her mother for which the rent is $1,100.00 a month which she says she pays in cash. The children are in public school and the plaintiff does have some problem with their care when she is working, but in general, she gets home within an hour after the children get out of school.
The onset of the bankruptcy makes it impossible for the court to make any distribution of property since, as far as the court knows, there is no property in the defendant's name at this time. The support order must be based on the defendant's testimony which indicates he earns a minimum of $400.00 a week since he does admit to tips. He has been ordered to pay support in the pendente lite orders by Judge Coppeto in March of 1992 which included $110.00 as child support and clothing allowance. He was also ordered to pay a gas bill of $179.00 a month until it was paid in full and an electric bill which he had previously been ordered to pay.
The difficulty of ascertaining Mr. Taranto's exact income and interest in the business in which he is presently working makes it impossible to apply the guidelines with any degree of accuracy. It does appear to the court that the minimum the defendant should pay is $125.00 per week per child, the amount he originally requested the court to order in his prayers for relief in August of 1991. In making this decision the court took into consideration the fact that he was recently held in contempt by Judge Coppeto for failure to pay the child support, and after being placed in the custody of the sheriff, he somehow managed to find $500.00 to bring the support up-to-date. He claims this was paid by his employer because if he went to jail the employer would lose his services. That may well be. It also may be that it was part of his compensation for his services. In any event, the court believes he should CT Page 11557 pay the sum of $250.00 a week for the support of the children at the rate of $125.00 for each child.
As for alimony, while the court does not believe it can order any substantial amount for alimony, it does feel that the plaintiff is entitled to a $1.00 a year in order to keep her options open in the event that Mr. Taranto's fortunes change substantially.
The defendant has also been in arrears in the pendente lite orders entered by Judge Coppeto. Since those orders by statute are alimony and support, they could not have been discharged by the bankruptcy decree. Consequently, the court finds that those orders were for the support of the plaintiff and the minor children pending the issuance of this judgment. Accordingly, the court finds that the defendant is in arrears in the payments due on those orders.
The amount of the arrears appears to be $9,312.00 on the first mortgage ($1,552.00 per month times six months) and $2,877.00 on the second mortgage ($959.00 per month times three months). Also, the unpaid utilities, which were part of the pendente lite order, were in arrears. Since all of these orders were pendente lite orders issued for the support of the plaintiff and the children, the defendant's discharge in bankruptcy should not apply to them. He is, therefore, ordered by this court to make payments on the arrears to the extent set I forth in this court's orders.
Having considered all of the factors enumerated in Connecticut General Statutes 46b-81 and 46b-82, the court makes the following findings and orders:
1. The parties were married in 1984 in Las Vegas, Nevada.
2. There are two minor children issue of the marriage, Ronald Zachiarah born September 5, 1989 and Lauren born November 8, 1985, and there are no other minor children issue of the marriage.
3. Both parties have resided in this state continuously for more than a year prior to the institution of this action.
4. The parties have agreed and the court finds that the marriage has broken down irretrievably, and it is hereby CT Page 11558 dissolved.
5. The parties also have stipulated that sole custody of the minor children shall be with the plaintiff with an agreed upon visitation schedule as set forth in the stipulation dated August 14, 1991, docket entry 159 of the file.
6. The stipulation is approved as being in the best interests of the children under all of the circumstances and reasonable and is therefore made an order of the court and part of the court's decree.
7. The defendant is ordered to pay $125.00 per week per child to the plaintiff beginning on the next date that the pendente lite order was to be paid following this judgment.
8. The defendant shall also pay $10.00 a week to the plaintiff on the arrears as found by this court until the same are paid in full.
9. The defendant shall also pay the plaintiff $1.00 a year alimony until her death, cohabitation within the meaning of the Connecticut General Statutes, or remarriage.
10. The defendant shall continue his life insurance policy in the amount of $150,000.00 for the benefit of the plaintiff for so long as he has the duty to support her.
11. The defendant shall provide medical and hospital insurance for the two children of the marriage and shall arrange for the plaintiff to be able to make the claims under the insurance policy without his signature.
12. All unreimbursed medical and hospital expenses of the children shall be shared equally by the parties.
13. The parties shall be responsible for their own attorney's fees and whatever bills are listed on their respective affidavits except for medical bills which shall be shared equally by the parties.
14. The wife may resume her maiden name of June Argenio.
15. A wage execution order shall issue for both the support and the alimony. CT Page 11559
It is so ordered.
MARGARET C. DRISCOLL, JUDGE REFEREE